OTTO BAHRLE *ET AL.*, PLAINTIFFS, v. JOSEPH MIRA-
BELLI, TOWNSHIP OF WEEHAWKEN, DIVISION OF
PENSIONS IN THE DEPARTMENT OF THE TREASURY,
STATE OF NEW JERSEY, AND THE BOARD OF TRUS-
TEES OF THE PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF THE STATE OF NEW JERSEY, DEFEND-
ANTS.

Superior Court of New Jersey
Law Division

Decided October 30, 1969.

*Mr. Lee A. Holley,* attorney for plaintiffs.

*Mr. George P. Moser,* attorney for defendants Mirabelli and Weehawken Township.

*Mr. Franklin D. Renkoff,* Deputy Attorney General, for Division of Pensions and Board of Trustees of P.E.R.S. (*Mr. Arthur J. Sills,* Attorney General, attorney).

FINK, J. S. C. This action was instituted as a "proceeding in lieu of prerogative writs." In my judgment that form of proceeding is inappropriate in this case.

The action is a tort action by multiple plaintiffs for money based upon defendants' alleged wrongful neglect of duty. Plaintiffs' factual contentions in the pretrial order and the statement of issues contained therein make this abundantly clear, and the trial itself proceeded on that theory.

The pretrial order also included a waiver of trial by jury and the abandonment by plaintiffs of their claims for punitive damages.

The precise issues presented in the context of the facts of this case are apparently of first impression and the case itself is purportedly a "test case," with others awaiting its outcome.

Plaintiffs, about 26 in number, contend that they are regular employees of the Township of Weehawken and required by law when hired to join the Public Employees' Retirement System (PERS). They allege that defendant Mirabelli, the township clerk, was designated by the municipality as certifying agent and that it was his duty to inform them of their obligation to join the Pension Fund and to enroll them as required by law. Plaintiffs assert that Mirabelli neglected his duty to advise them of their obligation to join the Fund and to enroll them, and as a consequence they were not enrolled until sometime in 1966, which was a considerable period of time after they were hired.

The law provides that each employee is required to contribute to the Pension Fund by deductions from his salary. Employers are also required to contribute. Because plaintiffs were enrolled much later rather than when they were hired, each of them was, in addition to deductions for current contributions starting in 1966, required to contribute on a

monthly basis, by deduction from his salary, installments on account of accumulated arrears. At the request of the employees, who complained that the double deductions constituted a hardship, the Fund materially reduced the installments on account of arrears.

This suit, originally instituted against Mirabelli and the Township of Weehawken, was later amended to include the Division of Pensions and the Board of Trustees of the Public Employees' Retirement System of the State of New Jersey. In the interest of brevity I shall refer to both of those public bodies as the "State." Mirabelli and the township then cross-claimed against the State for contribution in the event that plaintiffs were successful in their action against them. In their amended complaint plaintiffs charge the State with a violation of duty in that it failed to enforce the statute which makes mandatory the enrollment of new employees.

The responsibility imposed on the Board is defined in *N. J. S. A.* 43 :15A–17 which states that the "general responsibility for the proper operation of the Public Employees' Retirement System and for making effective the provisions of this Act shall be vested in the Board of Trustees subject to the limitations of the law."

The specific duty to inform a new employee as to his duties and obligations under the act as a condition of his employment is upon the employer. *N. J. S. A.* 43 :15A–29 provides that

Upon the employment of a person to whom this act may apply, his employer shall inform him of his duties and obligations under this act as a condition of his employment.

*N. J. S. A.* 43 :15A–67 provides that

The chief fiscal officer of the employer shall submit to the retirement system such information and shall cause to be performed in respect to each of the employees of the employer such duties as would be performed in the State service by the head of a Department of the State employing members of the retirement system.

Prior to the 1966 amendment of the above statute the employer was required to submit the information to the Board of Trustees rather than to the retirement system.

*N. J. S. A.* 43:15A–80 provides that

The chief fiscal officer of the county or municipality or the secretary of board of education of the school district shall submit to the Public Employees' Retirement System such information and shall cause to be performed in respect to each of the employees of the county, municipality or school district such duties as would be performed in the State service by the head of a department of the State employing members of the retirement system.

*N. J. S. A.* 43:15A–15 prescribes the duties of the head of a State Department and provides that

The head of a department or branch of the state service not included in a department employing a member shall submit to the board of trustees a statement showing the name, title, compensation, duties, date of birth and length of service of the member and any other information the board requires.

The employer is the Township of Weehawken. By resolution executed on February 19, 1962 Weehawken designated Joseph Mirabelli its township clerk, as certifying agent and the person responsible for the processing at the local level of all documents pertaining to PERS, particularly enrollments, members accounts, retirements and withdrawal claims.

The proofs establish that in 1965 the State undertook a survey of all New Jersey municipalities to determine whether any employees who had not established membership in PERS were required to establish membership as a condition of their employment. In accordance therewith, on November 22, 1965 a roster was sent to the Township of Weehawken with instructions that the information contained on the roster be completed for all employees who were not contributing to the Pension Fund or Social Security.

On February 15, 1966 Mirabelli, in response to the State's request, sent to the Division of Pensions a roster of town-

ship employees who were not then contributing to the Pension Fund.

On March 2, 1966 the Division, by William R. Murphy, Jr., supervisor of field services, wrote to Mirabelli after a review of the roster and informed Mirabelli which of the persons who were included in the roster were required to join the Fund, and in his letter he set forth the mechanics of enrollment.

On April 27, 1966 Mirabelli wrote to Murphy stating that there was much dissension among employees over 60 years of age to joining the Pension Fund and requested that a representative of the Division of Pensions visit the employees to enlighten them as to the benefits to be derived by enrollment.

On May 6, 1966 Mirabelli again wrote to the Division stating that May 26, at 4 P.M. at the Weehawken Municipal Building, would be a convenient time and place to meet.

On that date John P. Olender, an examiner of the Division of Pensions, visited Mirabelli who informed him of the objections of the employees to enrollment. Thereafter, that same day Olender met with the individuals involved and explained the benefits of the system and answered all of their questions. In his report of the meeting Mr. Olender stated that the chief objection of the employees to joining the system was the fact that they earned only $10 a day and were just about able to live on those earnings. They also objected to the fact that many of them were 60 years of age and over.

Plaintiffs offered no proof that the State had any knowledge that plaintiffs were in the employ of Weehawken prior to February 1966, and I find as a fact that prior to receiving the roster Mirabelli sent to it on February 15, 1966, the State had no knowledge that they were in Weehawken's employ.

On behalf of the State, William J. Joseph, Director of the Division of Pensions, testified that since the participation of the Township of Weehawken in PERS in 1948, the township was regularly advised by the Retirement System, and

later by the Division of Pensions, of the categories of eligibility for membership and specifically as to the category of employees who were required to be enrolled. He testified that numerous bulletins, field manuals and pamphlets, copies of some of which were received in evidence, were prepared by the Retirement System and the Division of Pensions, and sent to the Township of Weehawken and its certifying agent Joseph Mirabelli, reminding them of their statutory duty and changes in those duties in regard to enrollment procedures. In addition to the informational brochures referred to by him it appears that the back of the enrollment application sets forth the categories and obligations of membership. These enrollment applications were distributed to the township and Mirabelli as well as to every municipality in the State, and their certifying agents.

As noted, the statute imposes the primary obligation to enroll employees upon the municipality and its certifying agent. The imposition of such a duty upon the State would require constant vigilance upon its part to ascertain the hiring of new employees in the more than 500 municipalities of New Jersey. The statute cannot reasonably be interpreted to impose such a burden upon the State. It does specifically impose that burden upon the municipality, which obviously is in a far superior position to make known to the State the fact that a new employee was hired by it. In my judgment the State complied with its duty by circularizing to the municipalities and their certifying agents by way of pamphlets and other periodicals information which clearly indicated the mandatory requirement of enrolling new employees in the Pension Fund.

For the foregoing reasons I conclude that the State did not violate any duty it owed to plaintiffs or to Mirabelli or the township, and judgment of no cause for action is therefore entered in favor of the Division of Pensions and the Board of Trustees of the Public Employees' Retirement System of the State of New Jersey.

## AS TO MIRABELLI AND THE TOWNSHIP
## OF WEEHAWKEN

As I previously pointed out, *N. J. S. A.* 43 :15A–29 imposes upon an employer and its certifying agent the duty for processing at the local level all documents pertaining to PERS, particularly enrollment. The evidence is clear that prior to 1966 Mirabelli was totally unaware of the fact that it was mandatory for new employees to become enrolled in PERS. Obviously, therefore he was in no position to advise new employees of their mandatory obligation to join, and he likewise failed in his obligation to follow mandatory enrollment procedures. Plaintiffs allege that Mirabelli's neglect caused them economic damage and they seek money judgments to compensate them. Defendants Mirabelli and the township deny that any of the plaintiffs sustained any measurable damage, and they also defend on the ground that both are immune from liability because Mirabelli was acting in the performance of a public duty and under a public statute, and his dereliction of duty was neither malicious nor in bad faith.

## AS TO IMMUNITY

I am satisfied that the failure of Mirabelli to advise new employees of their obligation to join the Pension Fund and to enroll them on a mandatory basis, was a result of ignorance on his part of those requirements of the law. He testified that his duties as town clerk occupied all of his time and he had no time to read the pamphlets that were sent to him by the State in connection with PERS. While this establishes a failure to perform his duty as a certifying agent, it nevertheless is not proof that he acted maliciously or in bad faith, or that his conduct was willful in the sense that he knew of the mandatory provisions of the law and purposely failed to comply.

In *Miehl v. Darpino,* 53 *N. J.* 49 (1968), our Supreme Court said that "there are certain kinds of acts or omissions

of government, no matter how they are categorized, defined, or labeled or how governmental immunity from suit is to be regarded, which should not give rise to tort liability."

In *Visidor Corp. v. Borough of Cliffside Park,* 48 *N. J.* 214 (1966), the Supreme Court noted: "It may here appropriately be noted that the non-liability of individual public officials for damages ensuing upon their good faith of exercise of judgment and discretion in the performance of their duties, has long been recognized in our State."

In *Tyrell v. Burke,* 110 *N. J. Law* 225 (*E. & A.* 1933), the evidence disclosed that *Tyrell* applied for an embalming license (and probably also for license as a funeral director, but this is not clear) and took an examination on August 3, 1927; that a month later he was informed by the secretary of the board constituted for that purpose that he had passed the embalmers examination, but "did not make the license as funeral director," and it was intimated to him that the two went together. The license was not issued but he was told later that he had the secretary's letter and could carry on his business under that. The matter rested in that situation until plaintiff interested certain public officials in his behalf and the license was formally issued.

The court held that it was the board's duty, by law, to issue a license to such applicants as could, upon examination, satisfy the board of his qualifications. While testimony was given by board members to excuse their failure to issue the license, the court held that the conduct of the board exhibited "considerable ignorance of their duties and perhaps also negligence in their performance." However, the court found nothing from which it could be inferred that what occurred exhibited malice or bad faith toward plaintiff. The court held that, absent malice or bad faith, the law affords no redress in the form of damages against the action of members of a public body, and followed the rule that members of a public board acting in the performance of a public duty and under a public statute are not personally liable in a civil action for damages arising out of their acts, provided that what they do

was done in good faith, citing *Valentine v. Englewood,* 76 *N. J. L.* 509, 19 *L. R. A., N. S.,* 262 (*E. & A.* 1908), and *Johnson v. Marsh,* 82 *N. J. L.* 4 (*Sup. Ct.* 1912).

As in *Tyrell,* the conduct of Mirabelli exhibited considerable ignorance of his duties and a consequent failure to properly perform his duty of mandatorily enrolling new employees in the Pension Fund. I find nothing in this case, however, from which it can be inferred that his conduct resulted from malice or bad faith.

Since Mirabelli was engaged in a governmental function in the administration of a statutory obligation, in the absence of a finding of malice or bad faith in the performance of those duties neither he nor his employer, the Township of Weehawken, is liable in tort for a negligent performance of those duties.

## PLAINTIFFS SUFFERED NO COMPENSABLE DAMAGE

Notwithstanding that plaintiffs were not enrolled in the PERS when they were hired, and despite the fact that they paid nothing into the Fund until years later, they automatically became members of the Fund when they were hired and were entitled to its benefits.

The proofs establish that the State adopted this policy in all cases of noncompliance with mandatory enrollment, and proof was received of death benefit payments to the legal representatives of five nonenrolled township employees who died while in service, and one instance of retirement benefits paid to a Weehawken employee who, too, had not formally been enrolled. In each case payment was made by the State after first deducting the amount that each employee would have paid, with interest, had enrollment taken place upon hiring.

Every plaintiff in this case, even though not mandatorily enrolled as required, was therefore entitled to the benefits of the Pension Fund as of the date each was hired, subject

only to the requirement that they pay to the State what they should have paid.

■ The policy of the State conforms with judicial mandate. Employees required to enroll in a State Pension Fund are members of it despite the fact that the employer fails to make deductions from the employee's salary as required by law. *Board of Education of City of Linden v. Liebman,* 56 *N. J. Super.* 556 (*Ch. Div.* 1959); *Gerendasy v. Police, etc., Pension Comm'n of Elizabeth,* 130 *N. J. L.* 226 (*Sup. Ct.* 1943); *Caronia v. Police, etc. Pension Comm'n of Orange,* 18 *N. J. Super.* 149 (*App. Div.* 1952).

In *Geller v. Dept. of the Treasury, Annuity Fund,* 53 *N. J.* 591 (1969), the Supreme Court required a member of the Pension Fund to make payment of arrears (although a smaller amount than that required by the Pension Fund, for equitable reasons) plus interest to achieve a pension status she would have achieved had the payment of arrears been made as of a date in 1947, citing, with approval *Board of Education of City of Linden v. Liebman, supra.* See also, *Jacobs v. N. J. State Highway Authority,* 54 *N. J.* 393 (1969).

In plaintiffs' brief eight specific claims of damage are made. I shall deal with each claim in the order set forth in the brief.

1. A major portion of the retirement system is the provision of free, as well as optional, insurance. *N. J. S. A.* 43:15A-45(c), 46(c), 48(c)(d), 50 and 57. Plaintiffs were not insured during the entire period and should not have to pay for a system calculated to include insurance costs during such period.

The above allegation that plaintiffs were not covered during the entire period of their employment was not supported by any testimony at the trial. In fact, the testimony of William Joseph, Director of the Division, was to the contrary. He testified that the Division had in the past paid claims in regard to the free or noncontributory insurance, despite the failure of an employee to enroll where such en-

rollment was mandatory. This testimony is supported by Exhibit J1 in evidence wherein it is indicated that insurance benefits were paid on behalf of the following named plaintiffs: J. Rimmer, R. Temple, J. Coffee, K. Eckardt, O. Bahrle and D. Lane.

It should be noted in regard to the optional or contributory insurance, that prior to July 1, 1963 enrollment in the contributory insurance program was optional. Subsequent to that date enrollment in the program was made mandatory for one year. There has been no showing that any of the deceased named plaintiffs desired the contributory insurance, other than those who, in fact, did enroll in the program.

Since none of the named plaintiffs died without receiving the noncontributory insurance benefit, no loss has been shown to have been incurred by them. The evidence indicates that the deceased, as well as all other employees, were covered. Requiring payment by plaintiffs for such coverage is not unreasonable.

2. Plaintiffs should have been entitled to interest on their monies which they will not receive. *N. J. S. A.* 43:15A–33.

Plaintiffs had full use of their money during the period they should have been making contributions to the system. Having had that full use of their funds, their complaint of a lack of interest on those monies is not justified.

Interest on contributions is payable to a member only upon withdrawal from the system after three years of membership. *N. J. S. A.* 43:15A–41. Since the proofs at trial do not indicate that any of the withdrawing plaintiffs are eligible for interest, there has been no showing of damage to plaintiffs in regard to interest.

The "retirement allowance" is based on a five-year final average salary and years of service and is not based on the amount of the member's contributions in his account at the time of retirement. The retirement allowance is composed of the member contribution portion (an annuity) supple-

mented by the employer's contributions (a pension) in whatever amount is required to produce the statutorily guaranteed retirement allowance. The employer is billed annually under *N. J. S. A.* 43:15A–24 to insure that the pension element will be sufficient to support the annuity in guaranteeing the retirement allowance. Thus, the absence of interest in the membership account results in a higher cost to the employer with no loss of benefit to the employee. Consequently, plaintiffs have suffered no damage in regard to interest on their account.

3. Plaintiffs would have had standing to question various real estate investments made during the past years by the Board of Trustees. *N. J. S. A.* 43:15A–33.1, 33.2 and 33.3.

By statute the investment of the pension funds is vested in the Division of Investment subject to the approval of investments by the Board. The membership elects a municipal representative to the Board twice in every three years. Thus, had the plaintiffs been members, their control over investments would be so remote as to be unascertainable and to all intents and purposes is nonexistent. Neither the membership nor the Board makes any direct investments in real estate.

4. Plaintiffs would have been entitled to borrow money at favorable interest rates had they been members. *N. J. S. A.* 43:15A–34. They were denied these rights.

The loan provisions of the Public Employees' Retirement System allow a member to borrow up to one-half of the contributions in his account. Plaintiffs had the entire amount of their contributions for their use, not merely one-half of those funds, without the payment of interest to the Division. Thus, they not only deprived the entire membership of interest payments on the use of their contributions, but also deprived the system of the use of their monies for investment. To that extent, the Division and the member-

374

ship have been injured by plaintiffs' unlawful action in failing to enroll timely.

5. Plaintiffs would have been entitled to the security of knowing that they had a retirement income provided for *N. J. S. A.* 43:15A–38, 39, 41, 42 and 43.

By statute, plaintiffs had the benefit and security of the retirement system. No evidence was adduced at trial to indicate a feeling of insecurity on the part of any of the named plaintiffs. No testimony indicated that plaintiffs inquired of the Board or Division as to what benefits they might be entitled to. This lack of inquiry serves as evidence of the fact that plaintiffs were not concerned with their security.

6. Plaintiffs would have had standing to elect the Board of Trustees of the pension funds and were denied this right. *N. J. S. A.* 43:15A–17.

Plaintiffs have failed to submit any proof to indicate any injury resulting from their inability to elect the Board of Trustees of the retirement system.

7. But most importantly, plaintiffs lost the economic use of their salaries and the advantage of paying as they worked for their retirement. The payment of a small percentage over the years creates a far lesser economic hardship than the payment of the large sum when plaintiffs became less mobile economically.

As heretofore noted, the State reduced installments on account of arrears to the minimum permissible.

In my judgment the payment of these minimal installments to achieve a pension status each was entitled to, does not constitute measurable, compensable damage. Moreover, whatever disadvantage has resulted is more than offset by the benefits which accrued to each plaintiff without the expenditure of any money. They had the advantage of a right to benefits without making contributions, as compared with all others who did enroll when they were required to and did make contributions.

8. The inability to speculate as to actual damages illustrates the real harm suffered by plaintiffs. It may be that the amount of contributions made was the straw that broke any one plaintiff's back as to continued employment. Today, that plaintiff is given no choice; he either pays up or loses the benefit of service he has accumulated.

The reference in the first sentence above to an "inability to speculate as to actual damages" seems to be a tacit admission by plaintiffs that the alleged damages are in fact speculative and not real. Despite the fact that several years have passed since plaintiffs were enrolled in the pension system and paying small installments on account of arrears, there is no proof that anyone left his employment because he had to make those payments and there is no proof that anybody lost any benefit of service.

I find that no compensable damage has been sustained.

Judgment is therefore entered in favor of defendants Township of Weehawken and Joseph Mirabelli, and against plaintiffs of no cause for action.